# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**BOBBIE JO SCHOLZ,**

          **Plaintiff,**

      v.                                  Case No. 16-CV-1052

**UNITED STATES OF AMERICA,**

          **Defendant.**

## DECISION AND ORDER

This matter comes before the court on the defendant's motion "to dismiss a portion of the plaintiff's claim against it as time-barred, for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and failure to state a claim upon which relief can be granted pursuant to Federal Rule of [Civil] Procedure 12(b)(6)." (ECF No. 8.) The matter has been fully briefed and is ready for resolution. All parties consented to the full jurisdiction of a magistrate judge. (ECF Nos. 4, 7.)

### I. Facts and Procedural History

Because the present matter is before the court on the defendant's motion to dismiss, the court accepts as true the facts alleged in the plaintiff's complaint. *Golden v. State Farm Mut. Auto. Ins. Co.*, 745 F.3d 252, 253, 255 (7th Cir. 2014). According to her

complaint, Bobbie Jo Scholz served in the United States Army from 2006 to 2008. (ECF No. 1, ¶ 13.) After discharge she was treated for mental health related issues at the Tomah, Wisconsin Veterans Affairs Medical Center (Tomah VAMC) and hospitalized there from January 10 to February 9, 2011, and from March 3 to March 31, 2011. (ECF No. 1, ¶¶ 14-15.) Upon her discharge from inpatient care at the Tomah VAMC on March 31, 2011 she was prescribed 14 medications and placed on daily outpatient home health monitoring. (ECF No. 1, ¶ 16.)

> Throughout the remainder of 2011 and early 2012, Tomah VAMC nurses monitored Scholz' continuing and worsening mental health symptoms that included trouble focusing, loss of motivation, loss of interest in daily activities, high level of depression, decrease in cognitive status, loss of interest in activities, on-going confusion and anxiety, inability to concentrate with even simple daily tasks, and severe symptoms interfering with her ability to function and maintain independence in the community.
>
> On December 14, 2011 health care providers at the Zablocki VAMC verified that Scholz was now taking 16 active medications and despite her diminished mental status obtained Scholz' signature on a consent form for bilateral breast reduction surgery.
>
> On December 22, 2011, a psychological assessment performed at the Zablocki VAMC confirmed Scholz' high level of anxiety, post traumatic stress symptoms, and significant functional and cognitive deficiencies.

(ECF No. 1, ¶¶ 17-19.)

Scholz underwent elective breast reduction surgery at the Zablocki VA Medical Center (Zablocki VAMC) in Milwaukee on January 6, 2012. (ECF No. 1, ¶ 20.) Contrary to hospital policy, the operating surgeons did not receive Scholz's informed consent

2

prior to the surgery. (ECF No. 1, ¶ 20.) Scholz's medications and mental health status were not considered by the Zablocki VAMC surgeons prior to Scholz's surgery. (ECF No. 1, ¶ 21.)

Following surgery, Scholz suffered from persistent painful open wounds that were subsequently diagnosed as staph infections. (ECF No. 1, ¶ 25.) These and other complications resulting from the surgery led to four additional surgeries over the next two years. (ECF No. 1, ¶ 26.)

On September 4, 2013, Scholz submitted to the Department of Veterans Affairs a "Claim for Damage, Injury, or Death" (Standard Form 95, or SF-95) alleging that the surgery was performed without her informed consent and that "the surgery and post operative medical care were negligently performed[.]" (ECF No. 1-1 at 2-3.) The Department of Veterans Affairs denied Scholz's claim on April 2, 2014. (ECF No. 1-5 at 1-2.) Scholz sought reconsideration on September 26, 2014. (ECF No. 1-5 at 3-4.)

While her request for reconsideration was pending, Scholz learned of press reports of negligent care of patients in the same mental health treatment program she attended from January of 2011 until January 25, 2012, at the Tomah VA Medical Center. (ECF No. 1, ¶¶ 15-17, 24; ECF No. 1-2 at 1-3.) Therefore, on September 9, 2013, she filed a second SF-95, now alleging that she received negligent mental health treatment at the Tomah VAMC. (ECF No. 1-2 at 1-3.) She alleged "[s]he was placed in a dangerous situation through improper prescriptions of medications, was unable to properly care

3

for herself resulting in permanent mental, emotional and physical injury." (ECF No. 1-2 at 2.) She also referred to her pending reconsideration request related to her surgery. (ECF No. 1-2 at 2; *see also* ECF No. 1-3 at 1-2.)

The Department of Veterans Affairs denied this second claim on September 8, 2015. (ECF No. 1-6 at 1.) Scholz sought reconsideration on October 3, 2015. (ECF No. 1-6 at 2.) On February 18, 2016 the Department of Veterans Affairs denied both of her claims upon reconsideration. (ECF No. 1-7.) Scholz filed the present action on August 8, 2016, alleging various forms of negligence. (ECF No. 1.)

**II.     Motion to Dismiss**

"A motion to dismiss pursuant to [Rule] 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015). "A pleader's responsibility is to state a claim for relief that is plausible on its face." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty.*, 804 F.3d 826, 832-33 (7th Cir. 2015). In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Id.*

In deciding a motion to dismiss under Rule 12(b)(6) the court may consider only the pleadings. *See* Rule 12(d). The pleadings include the complaint, the answer, and any written instruments attached as exhibits. Fed. R. Civ. P. 10(c) ("A copy of a written

4

instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). "The traditional understanding of an instrument is a document that defines a party's rights, obligations, entitlements, or liabilities—a contract, for example." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citing Black's Law Dictionary 869 (9th ed. 2009)). However, the Court of Appeals for the Seventh Circuit has "taken a broader view of documents that may be considered on a motion to dismiss, noting that a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Id.*

Scholz attached to her complaint various documents related to the presentment of her claims to the Department of Veterans Affairs. The court concludes that it may properly consider these documents without converting the defendant's motion to dismiss into a motion for summary judgment. Along with her brief opposing the motion to dismiss Scholz submitted additional documents that had not been attached as exhibits to her complaint. (ECF Nos. 10-2, 10-3, 10-4.) Although not attached to the complaint, these documents are central to the complaint and referred to in it or in documents appended to it, albeit sometimes not explicitly. The court concludes it may also consider these documents when deciding the motion to dismiss. Finally, the United States in reply submitted a document that was originally attached to one of the documents Scholz submitted with her brief. Again, as a document central to the

complaint and referred to in a document attached to the complaint (ECF No. 1-4 at 3), the court finds it may consider this document without converting the motion into one for summary judgment.

### III. Analysis

#### a. Exhaustion of Claims of Negligent Hiring, Supervision, or Retention

This action arises under the Federal Tort Claims Act (FTCA). "[T]he FTCA bars would-be tort plaintiffs from bringing suit against the government unless the claimant has previously submitted a claim for damages to the offending agency, because Congress wants agencies to have an opportunity to settle disputes before defending against litigation in court." *Smoke Shop, LLC v. United States*, 761 F.3d 779, 786 (7th Cir. 2014) (citing *McNeil v. United States*, 508 U.S. 106, 112 & n. 7 (1993)); 28 U.S.C. § 2675(a). Although the FTCA's administrative exhaustion requirement is not a jurisdictional prerequisite, it is a "condition precedent to the plaintiff's ability to prevail." *Smoke Shop*, 761 F.3d at 786 (quoting *Kanar v. United States*, 118 F.3d 527, 530 (7th Cir. 1997)). "A plaintiff's failure to exhaust administrative remedies before he brings suit mandates dismissal of the claim." *Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

The United States contends that Scholz did not exhaust her administrative remedies as to certain claims in her complaint. It notes that Scholz alleged the following in her complaint:

> The Defendant breached its duty by negligently hiring incompetent, inexperienced and/or unqualified operators, administrators, employees, agents and staff.
>
> The Defendant had a duty to supervise and retain only competent and adequately trained operators, administrators, employees, agents and staff and to correct all defective care in order to meet the required standard of care of quality care for its patients, including Scholz.
>
> The Defendant breached its duty by negligently supervising and retaining incompetent, inexperienced, unqualified and/or inadequately trained or supervised operators, administrators, employees, agents and staff and failing to take timely corrective action.

(ECF No. 1, ¶¶ 42-44.) The United States says, "In these paragraphs, plaintiff appears to be alleging a breach of the tort of negligent hiring, training, and supervision." (ECF No. 9 at 4.) However, as the United States notes, under Wisconsin law the tort of negligent hiring, supervision, or retention is distinct from general negligence. (ECF No. 9 at 4-5 (discussing *Hansen v. Texas Roadhouse, Inc.*, 2013 WI App 2, ¶ 18, 345 Wis. 2d 669, 686, 827 N.W.2d 99, 107).) The United States contends that Scholz never presented a claim of negligent hiring, supervision, or retention to the Department of Veterans Affairs. As a result, she is barred from pursuing such a claim now.

Scholz argues that, because she included this claim as part of "the exchange of information that occurs once a claim is filed and complete medical records are received and reviewed," she exhausted it and can pursue it now. (ECF No. 10 at 17.) It is not clear where in "the exchange of information" Scholz alleges she presented a claim of negligent hiring, supervision, or retention. Scholz notes only that she submitted

7

"comprehensive written reports that includes expert opinions on the Zablocki VA treatment in 2014 and again after the Tomah treatment records were received in 2015." (ECF No. 10 at 17.) She does not explain how any report presented a claim of negligent hiring, supervision, or retention.

She continues in her brief:

> In Plaintiff's Zablocki VAMC 2013 tort claim submission, Plaintiff identified two health care providers, a physician assistant and inexperienced resident who had been improperly trained and supervised. Both the physician assistant and resident provided medical treatment to the Plaintiff without proper supervision and in violation of hospital protocols. Declaration of Woehrer, Exhibit A, pp. 2-3, 6-8, 10-11.

(ECF No. 10 at 18.) But the document she cites (ECF No. 10-2 at 2-3, 6-8, and 10-11) are portions of a document Scholz submitted *not* in 2013 as part of her initial claim but on September 26, 2014, as part of her request for reconsideration after her claim had been denied.

Similarly, she states: "Likewise, in Plaintiff's 2015 amended tort claim submission, Plaintiff identified specific health care providers who signed records but never performed any examinations and the lack of psychiatric supervision of nurses and physician assistants who provided treatment to the Plaintiff." (ECF No. 10 at 18.) However, Scholz does not support this sentence with any citation to the record.

A plaintiff is not required to have presented a particular legal theory in order to exhaust her administrative remedies. *Palay v. United States*, 349 F.3d 418, 426 (7th Cir. 2003) (citing *Murrey v. United States*, 73 F.3d 1448, 1452 (7th Cir. 1996)). Rather, she need

8

only allege the facts that gave rise to the injury and demand a sum certain. *Murrey*, 73 F.3d at 1452. If the plaintiff does so, she exhausts every cause of action that would be apparent to a legally sophisticated reader of those facts. *Palay*, 349 F.3d at 426; *see also Buechel v. United States*, 746 F.3d 753, 760 (7th Cir. 2014) ("Any claim 'implicit in the facts' should be deemed to have been presented to the agency.").

The fact that all Scholz can offer in her attempt to demonstrate exhaustion are broad references to supplemental documentation, without pointing to any specific statement, suggests she did not adequately exhaust her administrative remedies. That is especially true given that Scholz was represented by counsel during the entire administrative process and therefore is not entitled to the generous construction afforded to pro se litigants' claims. *Cf. Buechel v. United States*, 746 F.3d 753, 761 (7th Cir. 2014). Agencies are not expected to scour appended documents for "faint intimations of … additional claims." *Deloria v. Veterans Admin.*, 927 F.2d 1009, 1012 (7th Cir. 1991). "[T]his could hardly be the type of fair notice that Congress envisioned when it fashioned the presentment requirement." *Id.* (quoting *Bembenista v. United States*, 275 U.S. App. D.C. 292, 866 F.2d 493, 499 (D.C. Cir. 1989)).

Having said that, whether a legally sophisticated reader might recognize a claim of negligent hiring, supervision, or retention in Scholz's submissions to the Department of Veterans Affairs requires understanding the nature of that tort and how it differs from an ordinary negligence claim against an employee. An ordinary negligence claim

imposes liability upon the employer indirectly by way of respondeat superior for the employee's negligence. A claim of negligent hiring, supervision, or retention, however, is a claim that the employer was directly negligent. *Doyle v. Engelke*, 219 Wis. 2d 277, 291 n. 6, 580 N.W.2d 245, 251 (1998); *see also Glade v. United States*, 692 F.3d 718, 721 (7th Cir. 2012).

To establish a claim of negligent hiring, supervision, or retention the plaintiff must establish (1) there was a wrongful act by the employee; (2) the wrongful act by the employee was a cause of injuries to the plaintiff; (3) the employer was negligent in hiring, training or supervising the employee; and (4) the employer's negligence was a cause of the employee's wrongful act. *Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 267-68, 580 N.W.2d 233, 241 (1998). Thus, there must be a nexus between the negligent hiring, training, or supervision by the employer and the act of the employee. This asks two questions with respect to causation: first, was the wrongful act of the employee a cause-in-fact of the plaintiff's injury, and, second, was the negligence of the employer a cause-in-fact of the wrongful act of the employee. *Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 262, 580 N.W.2d 233, 239 (1998).

The court concludes that a legally sophisticated reader of Scholz's initial SF-95 and appended "statement of negligence and injuries" (ECF No. 1-1) would not recognize from the facts alleged that Scholz might have a claim of negligent hiring, supervision, or retention. Rather, a legally sophisticated reader would recognize only

claims regarding a lack of informed consent and negligent medical care. Even if the court were to look beyond Scholz's initial SF-95 and construe her subsequent submissions and requests for reconsideration as amendments of her claim, the court's conclusion would be no different. What she now alleges were references to a claim of negligent hiring, supervision, or retention were, at best, hopelessly oblique and contradicted by other statements where Scholz, through her attorney, was explicit that she was alleging only a lack of informed consent and negligent medical care regarding her treatment at the Zablocki VAMC (*see, e.g.*, ECF No. 10-2 at 11-12; *see also* ECF No. 10-2 at 1 (opening sentence of request for reconsideration stating, "A tort claim was filed on behalf of Bobbie Jo Scholz on September 11, 2013 based upon injuries resulting from failure to obtain informed consent and negligence in treatment arising from bilateral breast reduction surgery performed at the Zablocki VAMC in Milwaukee Wisconsin.")). Because she failed to exhaust her administrative remedies as to a claim for negligent hiring, supervision, or retention, Scholz is unable to recover on any such claim in this lawsuit.

b. **Statute of Limitations**

The United States also argues that Scholz's claims regarding the mental health care she received at the Tomah VAMC must be dismissed because they are barred by the statute of limitations. Pursuant to 28 U.S.C. § 2401(b), a tort claim must be

"presented in writing to the appropriate Federal agency within two years after such claim accrues." Thus, the question is when Scholz's Tomah VAMC claim accrued.

The United States contends that Scholz's Tomah claim accrued no later than January 25, 2012, when she was discharged from the Tomah VAMC mental health program. (ECF No. 9 at 9.) She did not file a claim regarding the Tomah VAMC until March 7, 2015 (ECF No. 1, ¶ 3), over three years later. Thus, the question is whether Scholz's Tomah VAMC claim necessarily accrued no later than January 25, 2012?

Scholz responds with three arguments. First, she argues that her Tomah claim is timely because it was presented as an amendment of her Zablocki claim submitted in 2013. Second, she argues that the Tomah claim is timely because she did not discover its relationship to her injuries until 2015. (ECF No. 10 at 10.) Third, she argues that, even if her claim was untimely, equitable tolling should apply.

A medical malpractice claim under the FTCA "accrues when the plaintiff knows both the existence and cause of his injury, and not at a later time when he also knows that the acts inflicting the injury may constitute medical malpractice." *Massey v. United States*, 312 F.3d 272, 276 (7th Cir. 2002) (discussing *United States v. Kubrick*, 444 U.S. 111, 122-24 (1979)). Thus, accrual depends upon "when a plaintiff has discovered his injury and its probable cause." *Id.* (quoting *Green v. United States*, 765 F.2d 105, 107 (7th Cir. 1985)). It does not matter that the plaintiff may be ignorant of her legal rights. *Id.* "Once armed with knowledge that he has been injured and by whom, the potential

malpractice plaintiff has reason to believe that he may have a legal claim; and he then has the statutory period in which to conduct the necessary investigation and prepare and file a suit." *Id.* (quoting *Goodhand v. United States*, 40 F.3d 209, 212 (7th Cir. 1994)).

It is not clear from her complaint whether Scholz alleges malpractice in the treatment she received at the Tomah VAMC or if she is alleging that the Tomah VAMC was negligent by discharging her from mental health treatment in January of 2012. To the extent it is relevant for purposes of the present motion, the court construes Scholz's complaint as alleging negligence in both respects.

The Tomah VAMC's discharge of Scholz may have been the final allegedly negligent act that led to her injury. But Scholz arguably did not learn until later that she had an injury attributable to the care she received at the Tomah VAMC. It is at that time, whenever it might be, that her claim accrued. In its motion to dismiss the United States does not identify the date on which any injury occurred or when Scholz would have been expected to connect her injury to the allegedly negligent care she received at the Tomah VAMC or to her allegedly negligent discharge from the Tomah VAMC. Because the United States has not identified any other date on which Scholz's claim accrued, the court finds it unnecessary to attempt to independently assess when Scholz's claim accrued. Moreover, the fact-intensive nature of analysis required in this case likely renders the issue inappropriate for resolution upon a motion to dismiss. For present purposes it is sufficient for the court to conclude that it rejects the United States'

argument that Scholz's claim against the Tomah VAMC necessarily accrued upon her discharge from the Tomah VAMC.

Because the United States' only argument is that Scholz's Tomah VAMC claim necessarily accrued no later than the date she was discharged from the Tomah VAMC (January 25, 2012), the court must deny the motion to dismiss Scholz's claims regarding the Tomah VAMC. That does not necessarily mean that Scholz's claim was timely. Additional evidence may show that her claim against the Tomah VAMC accrued more than two years before she filed her claim. The court concludes only that her claim did not necessarily accrue no later than upon her discharge from the Tomah VAMC. Thus, dismissal at this stage is inappropriate.

### c. Disclosure of Patient Treatment Records

In two paragraphs of her complaint Scholz alleges the following:

45. The Defendant had a duty to provide patient treatment records and notice of deficiencies in patient care at the Tomah VAMC to all other treatment facilities and to patients.

46. The Defendant breached its duty by negligently failing to ensure that patient treatment records and deficiencies in care were timely communicated to all VAMC health care providers and to the Plaintiff.

(ECF No. 1, ¶ 45-46.) In its motion to dismiss the United States wonders whether Scholz is alleging "some kind of tort based on an alleged duty to provide medical records to other patients, other health care providers, and to the plaintiff." (ECF No. 9 at 7.) If she is, the United States argues that such a claim is barred because Wisconsin does not

recognize any such tort. And even if Wisconsin did, the claim would be barred because Scholz did not exhaust this claim administratively.

In response Scholz states: "Plaintiff's claim is that her medical records and unstable mental condition was not provided to other VA healthcare providers and VA facilities that were treating her and resulted in injury. This lack of continuity of care is part of Plaintiff's medical negligence claim." (ECF No. 10 at 20.)

Given Scholz's clarification, the court does not understand her to be attempting to present an additional claim. Rather, she offers these details only in support of her medical malpractice claim. Construed in this manner, the court finds no basis for granting the relief requested by the United States, which offers no authority for the proposition that exhaustion requires a claimant to present each factual detail that might support her claim.

**IT IS THEREFORE ORDERED** that the United States' motion to dismiss is **granted in part and denied in part**. Scholz's claims regarding negligent hiring, supervision, or retention are dismissed because she failed to exhaust her administrative remedies with respect to these claims. The United States' motion to dismiss is denied in all other respects.

Dated at Milwaukee, Wisconsin this 25th day of January, 2017.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge