### The University of Chicago

**The Division of the Biological Sciences • The Pritzker School of Medicine**



Daniel Yohanna, M.D.
Interim Chair
Department of Psychiatry and Behavioral Neuroscience
(Voice)
5841 South Maryland Avenue, MC 3077
Chicago, IL 60637
dyohanna@uchicago.edu

Telephone: 773-834-4100

Fax: 773-834-7427
E-mail:

February 15, 2018

Susan M. Knepel
Civil Division Chief
Eastern District of Wisconsin
Federal Courthouse
517 East Wisconsin
Suite 530
Milwaukee, WI 53202

RE: Bobbie Jo Scholz v US

Dear Ms. Knepel,

Attached please find the written report from an independent review and opinions in this case.

If you have any questions regarding this report, please feel free to contact me or my assistant Marie Kay at 773-834-7008 or 702-5952.

Thank you for the opportunity to work with you.

Sincerely,

Daniel Yohanna, M.D.
Diplomate, American Board of Psychiatry and Neurology
Board Certified in Forensic Psychiatry
Associate Professor
University of Chicago

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW

**INDEPENDENT PSYCHIATRIC REVIEW RE: BOBBI JO SCHOLZ**

**INTRODUCTION:**
Bobbi Jo Scholz (DOB 10/28/1983) is a 34-year-old veteran who served in the Army National Guard from 2001 to 2008 and a tour of duty in Iraq from 2006-2008. She was honorable discharged March 12, 2008.

She was treated at the Zablocki Veterans Affair Medical Center (VAMC) in Milwaukee, Wisconsin and the Tomah VAMC after discharge for a variety of ailments including chronic ankle pain and surgery, PTSD, depression, anxiety and substance use disorders.

She consented for breast reduction surgery on December 14, 2011, and underwent bilateral mammoplasty reduction surgery on January 6, 2012.

Bobbi Jo Scholz, in her case Bobbi Jo Scholz v United States (E.D. of Wis. Case No. 16-C-1052), alleges that her mental health care from VA providers was below the standard of care prior to and after undergoing a voluntary bilateral mammoplasty reduction procedure by Drs. Hani Matloub and Patrick Hettinger on Jan 6, 2012. The plaintiff alleges that her mental state, at the time that she consented and up to the surgical procedure, was unstable which she concluded would have rendered her consent invalid.

**OPINIONS:**
In forming my opinion, I relied on the sources listed below as well as my experience and training.

It is my opinion within a reasonable degree of medical certainty that Ms. Scholtz met criteria for a major depression, unspecified anxiety, panic attacks and alcohol use disorder, in remission, cocaine use disorder, in remission, and nicotine use disorder.

It is also my opinion within a reasonable degree of medical certainty that at the time of consent Ms. Scholz was able to make an informed decision about her surgery and she remained able throughout the procedure and subsequent unfortunate complications.

It is also my opinion within a reasonable degree of medical certainty that Ms. Scholz' psychiatric care beginning after discharge through April of 2017 where the record ends, was within the standard of care for the psychiatric treatment of PTSD, depression, anxiety, and substance use disorders.

**SOURCES OF INFORMATION:**
1. Complaint
2. Bobbi Jo Scholz statement dated September 18, 2014
3. Photos produced by the plaintiff
4. Expert report of Larry Amsel, M.D., MPH dated November 22, 2017
5. Expert report of Tom Pausti, M.D.
6. Expert report of Shari Miller, RN

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW

7. Expert report of Jill Johnson, Pharm.D.
8. Medical records from Tomah VAMC dated August 3, 2008 to January 5, 2012
9. Medical records from the Zablocki VAMC dated February 25, 2008 to October 4, 2016 and October 4, 2016 through April 5 2017

## QUALIFICATIONS OF THE EXAMINER:

Enclosed is my Curriculum Vitae, which outlines my qualifications to perform this examination. I am a licensed, board-certified psychiatrist in psychiatry and forensic psychiatry. I have been on the full-time faculty of the Feinberg School of Medicine of Northwestern University from 1991-2005 and am currently the Interim Chair and an Associate Professor on the full-time faculty of the University of Chicago, Pritzker School of Medicine. I have published on severe and persistent mental illness, depression and post-traumatic stress disorders. I have lectured in these topics as well as on forensic psychiatry. I have examined and treated many patients with a history of childhood abuse, depression, PTSD, anxiety, substance use disorders, and chronic pain.

I attended medical school at Rush University in Chicago and residency at the Feinberg School of Medicine at Northwestern University. I have testified in numerous trials as an expert.

The Division of Psychiatry and Law at the University of Chicago's hourly rate for my services is $425 per hour.

## Family History

Ms. Bobbi Jo Scholz reports that she grew up in Algona, Wisconsin with her parents and younger brother. She reports she had a difficult childhood. Her parents separated when she was 8 years old, while she was in grade school, and she saw a mental health counselor for the first time. Ms. Scholz alleges that she was mentally, physically, and sexually abused by her mother's boyfriend from the ages of seven to nine. In high school, she reports spending time at her friend's parent's home rather than her own.

## Military Service History

Ms. Scholz joined the United States Army Reserve in 2006. She completed her basic training at Fort Hood and AIT at Fort Leonard Wood. Her highest rank achieved was E-5. She served in Iraq from February 2007 to February 2008. Her primary MOS was transportation and she worked in administration. While in military service she sustained an ankle injury, which she reported she did not know how it happened. She reports ankle pain continued for several months while seeking evaluation and treatment for her ankle injury. She was eventually recommended for surgery. Once she returned to the United States, she underwent surgical repair of her ankle injury at the Milwaukee VAMC for a torn tendon in her ankle. She reported no physical or sexual abuse while in the military, but endorsed having mental abuse while in the military as reported in her psychosocial assessment on (3/4/2011) because she was not believed to be in pain. A theme of not being believed in a variety of settings remained an issue throughout her treatment after her return to the states.

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW

**Substance Abuse History**
Ms. Scholz reports that she started drinking alcohol when she was in high school. She reports that her drinking became heavy after she returned to the states after her military deployment. She reports drinking up to 18 cans of beer per day, 5-7 shots per day, for a period of three years. Ms. Schulz reported she snorted cocaine from 2006, but regularly used beginning in February 2008-March 2011. She reported that she snorted cocaine 4-5x times a month.

**Inpatient, Residential and Outpatient Treatment for Mental Health and Substance Abuse After Return from Iraq**
Her first mental health evaluation after discharge was by Dr. Jill Klayman for an initial evaluation for PTSD evaluation on April 16, 2008. Ms. Scholz reported that she was treated while in Iraq with an antidepressant and seeing a psychologist, but there was no record available. She reported that even while in Iraq while advocating to return home for surgery, she began to cut herself to reduce her emotional pain and reported two suicide attempts.

She also complained of significant pain (a 6 out of 10) but did not want to take opiates because She had trouble with them before, saying she was "addicted" to them. At the time of the evaluation she was prescribed fluoxetine by her PCP but she stopped it due to "intolerable" side effects.
Subjectively she reported her affect as variable. She could be good for days then something negative happens and she crashes. She had suicidal ideation but no means (no pills) and no intent. She complained of GI upset and experiencing "horrible dreams…of blood everywhere". Her energy level was low. She was diagnosed with major depression, alcohol abuse, pain disorder, and borderline and histrionic traits.

On September 10, 2008, Ms. Scholz saw John Duffy for an evaluation. In that evaluation she had documented anxiety and depression which she stated was less from combat related issues and more related to being betrayed by important people in her life. She noted that she had overdosed twice in Iraq due to not being believed that her ankle was injured (in other reports she claims there was also self-cutting). She did not tell anyone and was not treated for that. She returned to the states in February 2008. She had surgery on her ankle in July of 2008 for a torn Achilles tendon. She was tried on an antidepressant, bupropion, which she felt helped and fluoxetine which she was "allergic" to. She had suicidal ideation but no intent to harm herself. She began individual therapy with Dr. Duffy.

She cancelled the next session for unclear reasons. She likely overdosed about this time on 16 "pills."

On September 30, 2008, she was hospitalized for the overdose of 16 pills approximately 6 days prior to admission. She denied suicidal ideation and requested to be discharged and requested no change in her medications, i.e., no new medications.

In an examination on November 20, 2008, for evaluation for a breast mass she was noted to have a PHQ-9 (screening for depression) of 14 out of a possible 27 (moderate depression 10-14).

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW

On November 24, 2008, she was evaluated for medication management with Stephanie Hall, RN for depression and anxiety. Ms. Hall noted that the depression had been present for a year characterized by sadness, despondency, loss of interest, being down on herself, decreased concentration and nightmares. She stated her anxiety began in March of 2008. She denied feeling panic attacks. An alcohol use problem was strongly suspected. Of note, Ms. Scholz reported being on several antidepressants up to that point: amitriptyline, sertraline, bupropion and fluoxetine. She felt none helped. She was on only lorazepam (an antianxiety medication) 1 mg three times a day as needed. She denied she was taking tramadol for pain, so citalopram (another antidepressant) 10 mg and trazodone 25 mg (used for sleep or depression) were started with instructions that each be doubled in one week, if tolerated.

On March 24, 2009, in a session with Dr. Duffy, she requested to be transferred closer to home (Green Bay) to see Victoria Gossens LCSW. If need be, he offered to see her again in the interim period.

Also, on March 24, 2009, she saw Dr. Ekern for a medication check. Ms. Scholz reported that she stopped the citalopram after a few weeks because of nausea and feeling jittery. Citalopram was stopped and she was prescribed mirtazapine 15 mg at bedtime.

In a phone call on April 18, 2009, Ms. Scholz stated she was depressed and had cut herself. She admitted to alcohol use. She was upset for the last three months because her unit was being deployed in June and she had been avoiding calls from her company and battalion. Police were called to her home for a "wellness check" and she was brought to St. Vincent's Hospital where she denied suicidal ideation and was furious with the call center.

In the St. Vincent Hospital Emergency room, Ms. Scholz had a self-inflicted wound to her right thigh. She was noted to have a history of self-mutilating behavior, depression, and PTSD. She denied that this was a suicide attempt but was rather a way for her deal with stress.

In May 13, 2009, she saw Victoria Grossens for therapy for her first session. The history revealed that Ms. Scholtz was in treatment in high school and was treated with sertraline. She admitted to self-cutting 6 months prior and two weeks prior leading to an admission. She was referred to attend the weekly coping skills class and Alcohol and other Drugs Addiction (AODA) support group. She was also referred to see Dr. Ekern for medication management.

She did not attend the class or the AODA support group.

On May 27, 2009, she did not attend her medication appointment with Dr. Ekern.

On June 15, 2009, in a session with Victoria Grossens, she admitted to increased anxiety, poor sleep, alcohol use of drinking 2-3 pitchers of beer, 2 times per week. She also complained of nightmares.

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW

In the June 16, 2009 meeting with Dr. Ekern, her mirtazapine was reduced to 15 mg (to take advantage of the more sedating nature of the medication at lower doses) and zolpidem (a sleep agent) 5-10 mg at bedtime as needed was prescribed.

In the note from Victoria Gossens dated July 20, 2009, Ms. Scholz anxiety was improved but sleep was still disturbed.

On August 12, 2009, Ms. Scholz still reported anxiety. She was taking up to 15 mg of zolpidem per day. She was encouraged to reduce her alcohol use.

In the September 30, 2009 session, alcohol use continued to be a concern as she was drinking 7-9 drinks, 2-3 times per week.

In the December 22, 2009 visit with Victoria Gossens, her mood was level but anxiety and depression were increased. She was better at calming herself. She was not suicidal. She had been made 100% service connected disability which she thought would be helpful financially. She was again encouraged to attend the weekly coping skills group.

In the next session, dated March 2, 2010, she reported doing well over the holiday and mother's birthday. She reported that any paperwork she has to do was overwhelming. She requested monthly therapy sessions.

In the June 9, 2010 medical visit with Dr. Loffredo for macromastia Ms. Scholz was informed she would have to stop smoking for six months before the surgery could be done.

In July 8, 2010 session with Victoria Gossens, Ms. Scholz' grandmother had recently died. She discussed wanting a breast reduction and she had quit smoking as of July 4th.

In a medication check on September 23, 2010, with Dr. Ekern, no medications changes were made. She was instructed on sleep hygiene and to avoid alcohol.

The next session on October 1, 2010, was with Ms. Gossens where Ms. Scholz was more depressed and anxious and now drinking more excessively.

By the next session of December 3, 2010, her drinking was out of control as she was drinking 3 pitchers of beer and shots daily. She was requesting a referral.

She did not show up for the December 22, 2010 meeting with Ms. Gossens. The therapist left a voice mail message and sent a letter. They discussed by phone on December 27, 2010, her acceptance into a 31-day Alcohol and Other Drug Abuse (AODA) rehabilitation program at Tomah beginning January 10, 2011. They cancelled their next two appointments in preparation.

On January 9, 2011, Ms Scholz entered a residential program for substance use disorders at the Tomah VA Medical Center and completed the program through February 9, 2011. She was diagnosed with PTSD, anxiety, alcohol, cocaine and tobacco abuse, major depressive disorder,

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW

macromastia and a history of a suicide attempt. Denise Cater, NP dictated on Feb 11, 2011, that upon completion of the program, Ms Scholz identified 10 benefits to staying clean and sober. It was reported that Ms. Scholz developed a sober living plan with her case manager. She was provided with medication compliance instructions, exercise recommendations, dietary recommendations, and a follow-up appointment. Ms. Scholz's psychotropic medication included Mirtazapine 15 mg at bedtime (an antidepressant) and zolpidem (Ambien) 10 mg at bedtime (for insomnia).

In the February 22, 2011 note, she returned to see Ms. Gossens with 46 days of sobriety. She did well with reduced panic attacks and anger. She would be returning to Tomah for aftercare in a Dual Diagnosis Treatment Program (DDTP) for PTSD and substance abuse. She was also attending AA meetings twice per week. She was smoking a half of pack per day.

On March 3, 2011, Ms Scholz enrolled in the DDTP at Tomah VA Medical Center. During the 28-day program, Ms. Scholz had counseling and medication adjustments, which were reported to improve her mental health. Ms. Scholz was noted to be an active participant in most of the group sessions she attended. She was reported to have been observed giving and receiving feedback from other group members. During this program, the patient was provided with the following services: history and physical examination, laboratory evaluation, medication management, team planning, group therapy, one on one therapy, education on addiction/mental illness, substance abuse consultation, physical therapy consultation, prosthetics, and podiatry care. The patient at discharge had 16 medications of which 13 were active and two were psychiatric medications. The psychiatric medications were Trazodone 100 mg at bedtime (used to treat insomnia) and Mirtazapine 30 mg at bedtime (an antidepressant). Ambien was discontinued and replaced with Trazodone, a safer alternative. On March 31, 2011, Ms Scholz was discharged home in stable condition. She was provided with instructions on medication compliance, dietary recommendations, exercise recommendations, and follow up appointments.

Upon discharge from the DDTP in March 2011, Ms Scholz was enrolled in the Care Coordination Home Tele-health program (CCHT). Per records, the CCHT staff reviews daily data sent by the patient. According to the records, disease management education for patients was provided on an ongoing basis with this service.

On March 8, 2011, she completed another assessment for follow up treatment for substance abuse in Milwaukee after she completed the DDTP at the Tomah VAMC by Joni Delwiche. It was noted that Ms. Scholz began to use alcohol and cocaine after returning from Iraq in February 2008. She used cocaine a couple times per month up to January of 2011 and drinking became bad around May of 2008 drinking daily or every other day up to a case of beer per episode. She was referred to the weekly substance abuse support group after her return from the dual diagnosis program.

In a follow up appointment with Ms. Delwiche on April 14 2011, Ms. Scholz reported that she was disappointed in the dual diagnosis program however she was motivated to continue her sobriety and attend substance abuse support group and participate in individual sessions with Victoria Gossens.

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW

On April 15, 2011, Ms. Scholz met with Victoria Gossens where she reported remaining sober and motivated.

Ms. Scholz met with Dr. Ekern on May 12, 2011. She was having sleep problems. Her trazodone was increased to 150 mg at bedtime and Mirtazapine was continued at 30 mg per day.

She attended her first group therapy on June 30, 2011, in Module 2 with Victoria Gossens and Joni Delwiche where she was thought to be participating.

In her individual session with Victoria Gossens on July 19, 2011, she continued her sobriety but had more anxiety and depression and a significant number of PTSD symptoms.

She attended group therapy again on July 28, 2011.

On August 15, 2011, she met with Dr. Ekern. She had started bupropion to help her quit smoking. She was also concerned about weight gain. Dr. Ekern's plan was to taper her off mirtazapine and start venlafaxine.

In individual therapy with Joni Delwiche on September 15, 2011, she reported 8 months of sobriety and 4 weeks not smoking. She remained motivated and insightful. She had started a new relationship. She had anxiety and wanted to address it with medications and possibly find a prescriber closer to home.

In the October 3, 2011 session with Ms. Gossens, it is noted that Ms. Scholtz remained abstinent and had stopped smoking for 6 weeks. She was going to pursue the breast reduction hoping to reduce her back pain.

On October 14, 2011, she had her first medication management evaluation with Dr. Dy to transfer her care. She was on the following psychiatric medications: bupropion 300 mg XL, trazodone 150 mg at bedtime and venlafaxine 150 mg per day. She is also on propranolol for high pressure. She reports more panic attacks from one a month to one per week lasting up to 2 hours. Also complained of poor sleep, poor concentration, and mixed motivation. Her nightmares she reports are under control. She is concerned she has ADD because she changes topics annoying her friends, feeling absent minded, her mind wanders and she frequently would drive past her stop. She was getting alprazolam (Xanax- an antianxiety medication) from a friend and wanted it prescribed but Dr. Dy declined. He did increase the venlafaxine to 200 mg per day and increase trazadone to 200 mg per day.

On Oct 20, 2011, Paige Gregar, RN responded to a Health buddy alert message from Ms Scholz, sent (10/19/11 at 12:14) were Ms Scholz answered yes to 2 questions:
 1) Have you felt or had any of the following symptoms- Confusion- yes
 2) Have you felt or had any of the following symptoms-Anxiety-yes
 3)

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW

Ms Scholz, per Ms Paige Gregar, RN's note, did not answer the call, and a message was left to return the call. When Ms Scholz contacted Ms Paige Gregar on October 20, 2011, she reported, "having more confusion and not being able to concentrate with simple daily task." This had occurred for the past 1-2 months. It was then reported that Ms. Scholz was scheduled for an evaluation for ADD in December 2011. Ms. Scholz indicated on that phone encounter that she was doing "well otherwise." Ms. Scholz reported that she continued to attend her group sessions and continued her smoking cessation. Per this document, Ms Scholz was encouraged by Ms Paige Gregar , RN to call back with any questions or concerns.

In her November 8, 2011 session with Victoria Gossens, she reports increased PTSD and irritability. She found that her parents were on her credit report. She planned to go to the credit union and decipher what the codes on the report indicated. She has maintained sobriety for 10 months. Her mental status exam was unremarkable. She was organized and her memory seemed intact. She was referred to attend one of the group therapies per week.

In the session dated November 30, 2011, Ms. Scholz reported high anxiety and occasional panic attacks. She was irritable and felt numb after her boyfriend broke it off with her. She remained abstinent. She was instructed to attend one group per week.

On December 22, 2011, Ms. Scholz had her neuropsychologic testing for ADD with Dr. Eric Larson. He noted that Ms. Scholz was "excited about breast reduction" to fit into her clothes better and reduce her pain. She was taking alprazolam of ¼ pill about once per week for panic attacks. She noted that Cognitive Behavioral Therapy (CBT) was not helpful for her anxiety. She was noted on mental status exam to be mildly depressed and anxious. She reported nightmares of Iraq and mass murder. Her insight was "reasonable." The tests revealed that she scored low to high average on all the tests with the exception of a recall list of words which was impaired. Her intelligence IQ was high average with an average span memory (repeating back a list of digits forward and backward). On scales of depression and anxiety she was moderately depressed with extremely severe anxiety. He also diagnosed her with reading and math learning disability. Dr. Larson concluded that her anxiety and PTSD was impacting her functioning and cognitive abilities and recommended group therapy, exposure therapy, and self-help books. He does *not* note that she was not competent to care for herself or make medical or financial decisions.

In the December 23, 2011 appointment with Dr. Dy, he recorded that Ms. Scholz reported still having 2-3 panic attacks per week despite the increase of venlafaxine to 100 mg twice daily. She reported improved sleep with trazodone 200 mg at bedtime. In his mental status exam, he described her mood as "fair" and affect "calm." He reported that she denied "suicide ideation, homicide ideation, and symptoms of psychosis." Ms Scholz's thought process was described as "clear" and her insight and judgment were described as "fair." He increased her dose of Venlafaxine to 150 mg twice daily.

On a Jan 4, 2012 meeting with Joni Dewiche (Addiction Therapist), Joni Delwiche reported that Ms. Scholz attended a 60 min group session. In her note, she reported that Ms. Scholz was "happy to report that she will reach her 1 year of sobriety that upcoming Saturday." "She

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW

reported she had some anxiety about surgery on Friday, but {she was} managing it appropriately."

On Jan 5, 2012, Dr. Dy saw Ms. Scholtz for an outpatient medication management visit. He documented that he met with Ms Scholz for 20 minutes. Dr Dy reported "Ms Scholz is non-compliant with taking prescribed meds listed in Electronic Medical Records as evident by: taking Xanax from friend." He documented that "Ms Scholz reported decrease of panic attack intensity and frequency, only having one since he last saw her and that it was at a crowded New Year's Eve party." Dr Dy reported that Ms. Scholz stated that she remained sober for one year's time. Her sleep was better with the increase in trazodone to 300 mg at night. At this visit Dr. Dy went over the Neuropsychological evaluation performed on December 14, 2011. He reported to her that her mood symptoms caused her concentration difficulties. Dr. Dy reported that he informed her that it was best for the venlafaxine (150 mg twice daily) medication that she was now prescribed for depression, to be given time work in conjunction with trazodone to address her mood and concentration. It was noted by. Dr Dy that Ms Scholz continued to use alprazolam despite his recommendation not to use the medication. During this session, he described her mood as "fair" with affect being "calm." She denied suicide ideation, homicide ideation, and symptoms of psychosis. Her thought process was noted to be "clear" with insight and judgment being described as "fair."

Patient had her surgery on January 6, 2012.

## Preoperative Evaluations and Consent

In a late entry by Dr. Michael Loffredo repeating the dictation from his 2010 initial visit noted above with Ms. Scholz, he notes that she is exercising again and is a good candidate for a breast reduction and that she would need to quit smoking.

On Oct 5, 2011, Dr. Patrick Hettinger (plastic Surgery Resident) wrote in his progress note that he met with Ms Scholz regarding her desire to have bilateral mammoplasty reduction secondary to symptomatic macromastia for several years. She informed him that she had quit smoking six months prior to that meeting. He reported that he discussed the surgery with her, including risks and alternatives to the surgery. Dr Hettinger also reported that he discussed "the possible loss of nipple sensation and inability to breast feed." He also discussed, "possible need to convert to nipple graft if vascularity is compromised during the surgery."

On December 14, 2011, Ms. Scholz was seen by the plastic surgeon to consent for surgery with Joseph Streff, PA. He documents that he spent over one hour explaining the procedure, answering questions and obtaining the consent for surgery. Dr. Matloub was also present and discussed Ms. Scholz's concerns at length reiterating the problems that are possible and sending her to a website for her to review photographs of this type of surgery. A six-page consent was signed

A preoperative history and physical was performed by NP Glowacki also on December 14, 2011. There were no complaints noted of memory problems on review of systems. Her physical exam was unremarkable and it also revealed that she was oriented and coherent. . NP Glowacki

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW

recommended to proceed with the procedure.     Anesthesia service also saw Ms. Scholz the same day and she was cleared for anesthesia.

**Postoperative Psychiatric Care**
**Note a review of the therapy sessions and medication management notes captures the course and history of Ms. Sholz's treatments and will be outlined below:**

Ms. Gossens saw Ms. Scholz on January 24, 2012, for the first time since the surgery. Her symptoms fluctuated with stress with mild depression and panic. She notes that her breast reduction surgery still had complications. She had remained abstinent for 15 months and no smoking for 5 months.

Note that Ms. Scholz also had home health nursing care from January 25, 2012 through May 25, 2012.

In a February 10, 2012 medication management note with Dr. Dy, she remains on trazodone 300 mg at bedtime and venlafaxine 300 mg per day. Also, of note, are several pain medications to be taken as needed including tramadol 50 mg 1-2 tablets every 4 hours as needed, oxycodone 5 mg 2 every 4-6 hours as needed for pain, naproxen 500 mg one twice per day as needed and morphine 15 mg one tablet twice per day. She had to return to surgery because of her nipple necrosis. Moods were dependent on pain. She is on narcotic medications but did stop the alprazolam she was getting from a friend. No change in medication was made. He was considering quetiapine or buspirone in the future. She was also seen by Victoria Gossens to begin intensive trauma processing in March.

They indeed met on March 1, 2012, but the session was primarily around the physical pain she was experiencing secondary to complications of the surgery which had increased her anxiety.

The next meeting was on March 8, 2012. She was cooperating with the treatment but depression and anxiety around the healing process and need for another surgery increased. This was the first 90-minute session for the intense trauma processing

On March 22, 2012, she continued to be committed to the treatment and planned to do Eye Movement Desensitization and Reprocessing (EMDR) resource development and installation for self-regulation to be discussed for the next session. Her pain was somewhat reduced.

In the April 12, 2012 90-minute session she continued to have physical complications from the breast reduction surgery and an open wound and another infection.

Also, on April 12, 2012, Ms. Scholz saw Dr. Dy for follow-up. She was frustrated with slow progress of her healing. She was anxious, more irritable and having panic attacks every day lasting 15 minutes to hours. She was running low on venlafaxine so she reduced it to 200 mg. Also, of note, is that she brought along a baby she caring for that day. Dr. Dy kept the venlafaxine at 200 mg, and trazodone at 300 mg and added buspirone (a non-benzodiazepine for anxiety) 10 mg twice per day for anxiety.

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW

The next session with Victoria Gossens was on April 26, 2012. She reports moderately high depression and anxiety with panic 5-6 times in the past two weeks, more intense dreaming and passive suicidal ideation without a plan or intent.

In the next contact with Dr. Dy by phone he increased the dosage of the buspirone to 15 mg twice per day.

Ms. Scholz was hospitalized on May 17, 2012, for surgery for complications. On May 22, 2012, a psychiatric consultation initial note was performed by Dr. Sherry Abraham because Ms. Scholz said she was having a" nervous breakdown" so a consultation was called. This increase in symptoms was attributed to the stress of the complications from the breast surgery and that she is not being heard which reminds her of not being believed about her ankle while in Iraq. She pushed for a longer stay in the hospital and this was granted. (perhaps helping her feel more in control). There was some concern that she was scratching at the wound and this infection was self-induced (but later in the stay she stated that it "just itches").

She was revisited on May 24 by the consultation team. Also, on May 24, 2012, Ms. Scholtz had a telephone session with Ms. Gossens for support. She was feeling better asserting herself and getting her needs met. Later that day she experienced an anxiety attack and was found curled up in a ball in the corner by nurse Breann Adam. She agreed to go to her bed with the side rails up.

Ms. Scholz also reached out to Dr. Dy who also returned her call on May 25, 2012.

She was seen once again by psychiatry consultation on May 25, 2012, and Dr. Abraham acknowledged the panic attack she had the previous day. She was concerned over the use of diazepam and morphine when she had the panic attack, although it did seem to help. She wanted to minimize the use of addictive medications and increased the buspirone to 30 mg twice per day. She was discharged on Tuesday May 29, 2012.

On May 31, 2012, in a phone follow up with Joseph Streff PA, she made an outpatient appointment.

On June 7, 2012, she saw Ms. Gossens as an outpatient. She reported fatigue and pain in her right breast. She has diarrhea and lost 15 pounds. She was noted to be in great physical distress which was contributing to her emotional stress.

In a June 11, 2012 phone call from Ms. Gossens, Ms. Scholz was tired from being in the ED the night before. She was doing okay.

In the June 29, 2012 session, Ms. Scholz reported that she was doing much better with the stiches out. Her mood was improved.

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW

In the July 10, 2012 session with Ms. Gossens, she was concerned that her recent increase in bupropion to 450 mg per day may be contributing her anxiety. She made an appointment to see Dr. Burwitz on July 18, 2012.

Patient missed her appointment to Dr. Dy scheduled for July 13, 2012.

On July 24, 2012, Ms. Scholz met with Ms. Gossens and the session was mostly around her physical problems and anxiety.

On July 27, 2012, Ms. Scholz saw Dr. Dy. She was distressed and anxious because of breast pain over the prior 3 weeks. He reviewed her medications and planned to taper her venlafaxine and buspirone and start her on quetiapine 50 mg twice per day. She planned to go to the ED for pain management.

In the August 8, 2012 session with Ms. Gossens, Ms. Scholz was still not satisfied with her pain management. Her depression and anxiety appeared related to her ongoing medical problems and fear of future reconstructive surgery.

In the August 31, 2012 session with Ms. Gossens, her sleep was poor due to not getting her medication, seasonal allergies and fever. They continued to work on coping skills
Also, on August 31, 2012, she met with Dr. Dy. She was out of trazodone for some days so her sleep was disrupted. She likes being on less medication and wanted to minimize her reliance of psychiatric medication.

On September 19, 2012, Ms. Scholz was more comfortable with the current treatment plan for pain. She was introduced to Acceptance and Commitment Therapy (ACT) with Ms. Delwiche and agreed to work with her on this treatment as well as coping skills with Ms. Gossens. She has remained abstinent despite the stressors.

In the October 2, 2012 session with Ms. Gossens, Ms. Scholz felt things were settling down and she was socializing more. She is aware that there were two more surgeries planned for January 2013, and one more about one year later.

On October 5 2012, Ms. Scholz met again with Dr. Dy for her continued panic attacks. She wanted a benzodiazepine, but Dr. Dy would not prescribe them to her. He did give another sleeping aid, eszopiclone (Lunesta) 2 mg and stopped trazodone. Her current medication was quetiapine (an antipsychotic with antidepressant and antianxiety properties) 100 mg at bedtime, eszopiclone 2 mg at bedtime, paroxetine (also called Paxil, an antidepressant and antianxiety medication)10 mg for anxiety.

On October 16, 2012, Ms. Scholtz saw Victoria Gossens. She was stressed with a move to a rental home. She reported that her sleeping medications were very effective.

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE
ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW

In the November 6, 2012 meeting with Ms. Gossens, she completed her move. She was contacted by her mother which is a trigger for her. She is concerned about weight gain and has not been taking all her medications as prescribed.

In the November 9, 2012 meeting with Dr. Dy, Ms. Scholz reports that she moved into a different house by herself. She was still depressed at times. She stopped the quetiapine because of weight gain. He will try to get eszopiclone for her through a preauthorization.

In a telephone call to Dr. Dy, on December 10, 2012, Ms. Scholz complained that the paroxetine made her nauseous, cramping and caused weight gain. She resumed taking venlafaxine.

On January 25, 2013 meeting with Dr. Dy, she continued to use alprazolam (Xanax) despite Dr. Dy's disagreeing. She stated her mood was fair overall. Sleep was still difficult. She would continue on zaleplon 5-10 mg at bedtime and trazodone 300 mg. She decided she will only take venlafaxine if her mood declines. Dr. Dy did order alprazolam 1 mg tablets as she has been using them for panic attacks (despite getting the drug from a friend).

In a follow up session with Ms. Gossens on February 1, 2013, it was noted that she has been in weekly ACT therapy with Joni Delwiche and that she would resume with Ms. Gossens once that treatment was completed. Ms. Scholz felt the ACT treatment was extremely helpful and "tremendously" improved her mood. She was no longer on an antidepressant and was resuming old friendships. She was accepted as a volunteer advocating for foster children. Her reconstructive surgery was scheduled for March 8, 2013.

In the April 26, 2013 session with Ms. Gossens she reported moderate anxiety and depression. She was proud she was volunteering and dealing with her step mother and father better. She was almost through the ACT therapy which she reports was very helpful to calm herself naturally.

On May 23, 2013, she met with Ms. Gossens. She was still doing well and reported sleep disturbance of middle of the night awakening and noted the next day is when she often panics. She was seeing another vet and felt they had much in common. Another surgery was scheduled for June 28, 2013. They planned to continue EMDR related resource tapping for PTSD.

Ms. Scholz met with Dr. Dy the next day, May 24, 2013. She remained on the alprazolam 0.5 mg as needed each day, trazodone 300 mg at bedtime and zaleplon (Sonata) 10 mg at bedtime for sleep. She was under stress with her father, new relationship and pain. He added a low dose of fluoxetine after determining that her prior reaction was not an allergic reaction.

On May 30, 2013, she met with Ms Gossens. She was stressed by her boyfriend pulling away and an acquaintance's suicide (the second in the past year).

In the June 6, 2013 meeting, she was in pain from her stomach and feet and ankles and could not participate in EMDR.

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW

The next session dated June 13, 2013 with Ms. Gossens, Ms. Scholz complained that her anxiety and mood fluctuated with stressors. She reported somewhat improved sleep.

In the June 20, 2013 session, she reports moderate anxiety and mild depression but overall stable.

The next session is June 27, 2013, which is one day prior to her fourth surgery on her breasts. She will have a friend to help her after the surgery.

In a phone call with Dr. Dy on July 5, 2013, Ms. Scholz reports her sleep is improved.

In the July 11, 2013 session with Ms. Gossens, she reports that she is concerned about the healing of her left breast and wants to get a second opinion. Dr. Dy concurs that an outside consultation will help her anxiety and it is requested.

On the July 18, 2013 session with Ms. Gossens, Ms. Scholz reported moderate depression and anxiety and she will follow up with the surgeons on July 24. She has reached out for support from others. They are delaying resuming EMDR.

In the August 1, 2013 session, she is exhausted and numb from the surgery and feels like just giving up on it. Her request for an outside referral is under appeal.

Ms. Scholz then saw Dr. Dy on August 2, 2013, and reports more depression and frustration in her medical care. She is still working on getting an outside doctor to take care of her surgical needs. She is volunteering and that makes her happy. The fluoxetine (Prozac) was increased to 20 mg per day.

Her next visit with Ms. Gossens was August 7, 2013, where she states she has moderate anxiety and feels emotionally numb. She is concerned about the healing of her breasts. She saw her surgeon on this day and reported a burning sensation in her breasts.

On August 28, 2013, Ms. Scholz reports high anxiety over the lack of healing. She was called for a second opinion in Madison, Wisconsin but she wants a second opinion outside the VA. She was granted non-VA approved breast tattoos but she will have to wait until she has healed.

In the session dated September 4, 2013, she is not satisfied with the pain management and has pelvic pain also. She is also waiting for gynecologic appointment. She is practicing Yoga which she finds helpful. They continue the EMDR therapy.

On September 11, 2013, September 18, 2013, they continued EMDR therapy.

In the September 25, 2013 session, EMDR was interrupted to talk about the work she is doing on her uncle's farm because he is injured and a possible move to a friend's house to help her raise her 14-year daughter. She is stressed and more anxious.

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW

On September 27, 2013, she saw Dr. Dy who increases her fluoxetine to 30 mg per day to help her with stressors. Her alprazolam is increased to 1 mg per day as needed.

In the October 16, 2013 session with Ms. Gossens, they decide mutually to postpone EMDR therapy so she can concentrate on the decisions she has made about moving in with a friend to care for her 14-year-old daughter.

On October 30, 2013, she reports that she is having pain in her feet and back. She is seeing a chiropractor. She has moved in with her friend to care for her 14-year-old daughter. There is some conflict with her friend on how Ms. Scholz is managing the daughter. She is regretting her decision.

In a November 20, 2013 phone call to Ms. Gossens, Ms Scholtz is upset that her uncle auctioned his farm equipment. She stated her living situation has improved.

In the November 22, 2013 meeting with Dr. Dy, she has stressors but is managing.

Her next visit was with Dr Dy on January 13, 2014. She has stressors and is more irritable and angry. She is sleeping fair and having nightmares again. Dr. Dy increased her fluoxetine to 40 mg per day and started prazosin for the nightmares.

In the January 22, 2014 session with Ms. Gossens, she is stressed and even has urges to drink. Her surgery was postponed to evaluate a lump with a mammogram.

The next session on February 12, 2014, with Ms. Gossens finds Ms. Scholz very anxious. She is restless 6 nights out of week. She will be moving out from her friend's house into her own duplex. She started dating a man she has known for 4 years and reports that it is positive. She has lost 50 pounds in the last few months and she is concerned she has cancer. She is awaiting a biopsy.

The next session was March 12, 2014. She is sleeping poorly, has nausea, diarrhea, lack of appetite and weight loss. The breast biopsy was negative. Her 6th surgery on her breasts is scheduled for April 17, 2014. She meditates and also attends an anger management group.

In the March 13, 2014 medication management with Dr. Dy he noted that she is dealing with several stressors. She moved out of her girlfriend's home. Her boyfriend will be going to jail for an old operating while intoxicated charge. She will be going on a vacation with friends to Cancun in April for a week. Her sleep is mixed, nightmares are reduced. He increased the prazosin dose to 4 mg.

In the April 1, 2014 session with Ms. Gossens, she is more anxious in response to the anniversary of her deployment to Iraq. She has periodic contact with her mother which is a triggering event for her.

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW

In the note from Ms. Delwiche dated April 2, 2014, she documents that Ms. Scholz attended the 8th of 10 group sessions for anger management. She asked to do a mindfulness exercise before the group for stress relief. She reports at that time that she is trying to keep busy, going to the gym, meditating while tanning.

Ms. Scholz missed the April 14, 2014 meeting with Ms Gossens.

In the May 9, 2014 session with Ms. Gossens, Ms. Scholz reported that she is three weeks out from her fifth breast surgery and unhappy about physical limitations. Her sleep fluctuates, she feels fatigued, and she is dealing with her brother and mother. They work on setting limits and recommend that she attend the AODA alumni support group.

In the May 27, 2014 session, Ms. Scholz reports increase in PTSD symptoms and anger over seeing people of Middle Eastern decent. Her breast surgery was not satisfactory to her and will discuss it with her surgeon. She is considering donating a kidney to a high school classmate.

In the June 18, 2014 session, Ms Scholz is going through another period of depression over the prior several days. Stressors include contact with another female soldier, Father's Day and the upcoming breast tattoos in July. She is not happy with the result of her breast surgeries but feels she is done and wants to move on.

Around this time, she joined another group consisting of 7 sessions titled "Habits of Happy People."

In the July 2, 2014 session with Ms. Gossens, she reports moderate anxiety that fluctuates with stressors, fatigue, poor appetite and some memory and concentration problems. She has many triggers from her childhood and Iraq. She is exercising twice per week and wants to find a loving partner although she feels undeserving of it.

In the July 22, 2014 session, she has pain from an ovarian cyst. She has started to date a man that is overall positive. She is concerned she will not know how to show love since she did not receive it growing up. Ms. Gossens also informed her that she would be leaving the VA in August. Ms. Scholz will request non-VA care to continue to see her.

In the August 15, 2014 session, Ms. Scholtz reported that she had increased anxiety, depression and sleeping only 4 hours per night. She has resumed drinking after a three-and-a-half-year sobriety. She realizes that she is drinking for all the wrong reasons but believes she can control it.

See below for the non-VA therapy with Ms. Gossens beginning October 2, 2014.

On October 16, 2014, Ms. Scholz met with Dr. Dy. She is overall doing well. She is dating and has ups and downs in her mood and anxiety. Her medications remain trazodone 300 mg at bedtime, alprazolam 1 mg daily as needed, zaleplon 5-10 mg at bedtime as needed, fluoxetine 40 mg per day (increased in January 2014) and prazosin 4 mg at bedtime.

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW

In the January 16, 2015 medication management meeting with Dr. Dy, she ran out of prazosin and her nightmares increased. She continues to work in a bar 15 hour per week, her moods are fair and social life with some friends. She no longer had a boyfriend.

In a phone call dated February 15, 2015, to the case manger line, Ms. Scholz said that she was being evicted and had to be out by April 31, 2015. She requested a letter to have her companion animal in an apartment. The case manager also was looking for pet-friendly rentals.

In the June 1, 2015 medication management meeting with Dr. Dy, after Ms. Schulz has a right ACL repair, she is more isolated with worse sleep and more nightmares. Her prazosin was increased to 6 mg.

Ms. Scholz missed the August 19, 2015 medication management meeting with Dr. Dy.

The next meeting with Dr. Dy was on August 25, 2015. Patient was doing well despite stressors and loss of her dog. She is more mobile and hopes to return to work part time bartending.

On September 1, 2015, Ms. Scholz called the Vet's Crisis Hotline at 3:00 am. She was dealing with an urge to drink and had been drinking that evening. She was not suicidal or homicidal. There were several calls the next day and she was under many stressors as noted before. She was to call Ms. Gossens to discuss if an inpatient admission was warranted.

In the October 27, 2015, Ms. Scholz met with Dr. Dy and her moods were pretty stable. She is busy dealing with her cousin who lives with her, bartending, getting a new dog, social life and friends. Her sleep is disturbed with vivid dreams but no nightmares. She is drinking once per week 1-3 drinks sometimes up to six. Dr. Dy increased the prazosin to 8 mg at bedtime.

In the December 2, 2015 medication management meeting with Dr. Dy, she is doing well. Some stressors with another dog and her other dog biting someone. Dreams are less vivid. No medication changes were made.

In the February 9, 2016 medication management meeting with Dr. Dy, she was upset, more depressed, sleeping more and motivated less. Stressors included that she could no longer see Victoria Gossens as a non-VA provider. She was drinking once per week more than she should. Her fluoxetine was increased to 60 mg per day. Dr. Dy made an addendum supporting Ms. Scholz's continued therapy with Ms. Gossens.

On February 12, 2016, Ms. Scholz called the Case Manager line because she had been informed that she could no longer see Dr. Dy. During that time, she had many stressors including knee surgery, death of a companion dog, dealing with her cousin as a roommate, adopting a new dog. She had depressive symptoms at times and complaints of exhaustion. She improved during those sessions using mindfulness, CBT, medication, psychoeducation and EMDR.

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW

In the April 20, 2016 medication management note from Dr. Dy, Ms. Scholz reports ups and downs. Sleeping 5-6 hours per night and she has continued to see Ms. Gossens under Medicare. She found the fluoxetine too tiring so reduced it back to 40 mg per day. She is working long hours and helping two foster children.

In the December 9, 2016 medication management note from Dr. Dy, Ms. Scholz was doing well. She was sleeping well. She had a new roommate and a cleaning job with regular hours. Her relationships were more stable. No medication changes were made.

In the March 10, 2016 medication management note from Dr. Dy, Ms. Scholz was struggling with lowered mood. Her grandfather passed away recently and she had been more ill over the prior six weeks, not going to activities or counseling. The prazosin was increased to 10 mg at bedtime.

There was brief telephone contact made with Dr. Dy on November 2, 2016.

In the next medication management note dated December 16, 2016 from Dr. Dy, Ms. Scholz was doing better. No medication changes were made.

In a telephone call documented by Kelly Bullock on February 24, 2017, Ms. Scholz took too many medications and felt dizzy and sleepy and could not get off the floor. An ambulance was called and at St. Vincent hospital she stated she was better.

Ms. Scholz saw Victoria Gossens in her private practice on October 2, 2014, for assessment and recommendations for treatment for her PTSD, anxiety and depression privately. Noted is her history of counseling in 2008, psychotherapy beginning 2009, substance use treatment and a dual diagnosis program. She had been treated with CBT, ACT and was preparing for EMDR trauma processing. She also was seeing a psychiatrist, Dr. Dy, since 2011. She was particularly anxious due to a recent breakup with an abusive partner. She has three different relationships in the prior year. She retained sobriety until a few months prior to the evaluation. She was drinking 3-4 drinks every other week at the time of the evaluation.
Dr. Gossens continued to treat her in 6 authorized sessions. She was noted to be helping a friend bartend 20-40 per week.

Patient was seen a total of approximately 42 sessions through 2/29/2016 where the record ends.

## FORENSIC FORMULATION AND REASONING:
Diagnosis: Major Depression, in partial remission, Unspecified Anxiety Disorder, Panic Disorder, Alcohol Use Disorder- in remission, and Tobacco Use Disorder and Cocaine Use Disorder- in remission.

It is my opinion within a reasonable degree of medical certainty that Ms. Scholtz met criteria for a major depression, unspecified anxiety, panic attacks and alcohol use disorder, in remission, cocaine use disorder, in remission and nicotine use disorder.

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW

It is also my opinion within a reasonable degree of medical certainty that at the time of consent Ms. Scholtz was able to make an informed decision about her surgery and she remained able throughout the procedure and subsequent unfortunate complications.

It is also my opinion within a reasonable degree of medical certainty that Ms. Scholz' psychiatric care beginning after her return to the states in February 2008 through April of 2017 where the record ends, was within the standard of care for the psychiatric treatment of PTSD, depression, anxiety and substance use disorders.

I disagree with several aspects of Dr. Amsel's report.

One fault of the report is the inclusion of issues unrelated to this case such as the Tomah VAMC being the subject of many complaints, and its Director, Dr. David Houlihan, was known as the 'candy man because of his overabundance of medication being prescribed to veterans' has no real bearing on this case.

Also, Dr. Amsel makes conclusions from single statements that there is a larger issue. This inductive reasoning did not have data to support it. For example, Ms. Scholz stated in her first mental health evaluation with Ms. Klayman that she was "addicted" to painkillers however she never showed evidence of opiate abuse after this evaluation even when she had these drugs available to her. Also, she stated she was "bouncing off the walls" and had a fall in March of 2011, that it was indicative of a drug interaction or of a serotonin syndrome. She tolerated these medication for many months although they may not have had the desired result of no panic attacks or depressive symptoms.

Serotonin syndrome is a serious complication generally of mixing two or more serotonin agents. It is persistent in nature and includes cognitive effects, autonomic effects and muscle effects. Cognitive effects can mild from a headache to severe with mental confusion, hallucinations and coma. One would expect autonomic changes like rapid heartbeat, changes in blood pressure sweating and muscle effects of twitching, stiffness or tremor over a sustained period of time. A single comment like "bouncing off the walls" would not suffice.

I would differ from Dr. Amsel's opinion that the care given to Ms. Scholz was below the standard of care. She had ongoing and extensive care for her depression, PTSD, anxiety and substance use disorders with inpatient psychiatry when it was most needed after self-injury, residential programs for substance use disorders, a 28-day dual diagnosis program as well as individual and group psychotherapy. She was offered several types of psychotherapy including CBT, ACT and EMDR which at points she found very helpful. She was enrolled in a Care Coordination Home Tele-Health program (CCHT) and was encouraged to call the crisis line and case management line for help, which she did. Her medication regimen for psychiatric medications were all within the standard of care using an antidepressant for depression and anxiety, avoidance of addictive medication such as alprazolam until it was believed safe for her and no other option was available. She was also eventually treated with use of prazosin for nightmares. Ms. Scholz' psychological difficulties were significant throughout her life. She was abused as a child, taken advantage of by her relatives and experienced great stressors when

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW

deployed. It is expected that treatment can be slow with ups and downs and it took many months if not years for Ms. Scholz to make steady progress but indeed she made progress through increased socialization and support, work, volunteering, boyfriends and a long period of sobriety to mention a few. It is likely she will always be dealing with anxiety, depression, and PTSD symptoms but with improved coping skills and medications.

I would also disagree that at the time of consent on December 14, 2011 and her surgery in January that she was unable to consent for surgery or for her medical care. If that were true, the VA would have had to procure a surrogate decision maker, pursue guardianship and for the psychiatric medications, a court determination. To make an informed consent one must know the problem or diagnosis, know the intended treatment and alternatives, know the potential side effects and complications and know what might happen if no treatment was rendered. Ms. Scholz was looking forward to the breast reduction to help with her back pain and appearance. She spent more than an hour with two health care providers going over the potential side effects and complications, signed a consent and was given a copy listing the possible complications and knew that without the surgery she would continue as is. She was referred to an online video of the procedure. Granted this was a long and drawn out set of complications that would upset anyone but that does not mean she was unable to consent. In addition, prior to the surgery, she not only had the neuropsychological testing, but she saw her psychiatrist twice and a therapist once and there was no indication that she was not able to make an informed decision. You do not have to be perfectly compliant with treatment or not have depression or anxiety to consent.

When Ms. Scholz complained of confusion, a neuropsychological exam, already ordered for ADHD was performed with a conclusion that for almost all the tests, she scored in the low to high average range and was appropriately interpreted by the psychologist as likely secondary to her mood disorder and PTSD. There were no significant underlying cognitive problems.

I would also disagree that Ms. Scholz was "deteriorating." It is true her anxiety and PTSD were not successfully treated in full but her depression improved and her substance use had curtailed and she was abstinent for almost one year at the time of the surgery. That is indicative of progress.

I would also disagree with Dr. Amsel that the number of medications listed after a discharge in and of itself indicates malpractice. The 16 listed drugs at the time of discharge from the DDTP at Tomah on March 31, 2011, upon closer examination reveals only 3 were psychiatric medications, and others were for common ailments like infection, acne, high blood pressure and heartburn.

To the extent any additional material is produced, I reserve the right to supplement or amend this report as appropriate.

To the extent that any other expert offers an opinion in my areas of expertise to which I disagree, I may be asked to comment on that opinion.

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW

Respectfully submitted,

Daniel Yohanna, M.D.
Diplomate, American Board of Psychiatry and Neurology
Board Certified in Forensic Psychiatry
Associate Professor
University of Chicago Medical Center

THIS REPORT IS CONFIDENTIAL AND SHALL NOT BE DISCLOSED EXCEPT AS PROVIDED IN THE
ILLINOIS CONFIDENTIALITY ACT 740 ILCS 110 OR AS OTHERWISE PERMITTED BY LAW